**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5173-15T1

DEPARTMENT OF COMMUNITY
AFFAIRS, SANDY RECOVERY
DIVISION,

      Petitioner-Respondent,

v.

WILLIAM NOE,

      Respondent-Appellant.

_____

      Submitted October 1, 2018 – Decided  October 16, 2018

      Before Judges Sabatino and Mitterhoff.

      On appeal from the New Jersey Department of Community Affairs, Sandy Recovery Division, Docket No. RSP0033362.

      William M. Goldberg, attorney for appellant.

      Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Valentina M. DiPippo, Deputy Attorney General, on the briefs).

PER CURIAM

William Noe appeals the June 13, 2016 final agency decision of the Department of Community Affairs ("DCA") rescinding the agency's award of a Superstorm Sandy grant to him, and directing him to refund the $10,000 grant that he improperly received. We affirm.

Noe applied for the grant under the Homeowner's Resettlement Program, known as the "RSP." The RSP is one of four homeowner assistance programs administered by the DCA through the Sandy Recovery Program to aid eligible New Jersey residents who were affected by Superstorm Sandy. Pursuant to the Disaster Relief Appropriations Act of 2013, the United States Department of Housing and Urban Development ("HUD") awarded Community Development Block Grant Disaster Recovery ("CDBG-DR") funds to assist in the State's recovery from Superstorm Sandy. N.J. CDBG-DR Action Plan at 1- 1 (2013).

The RSP grant program rules require the damaged property be the applicant's "primary residence" as of the date of Superstorm Sandy, which was October 29, 2012. Noe owns a house in Brick Township in Ocean County that was damaged in the storm. Noe asserted on his application that the damaged house was his primary residence, and he accordingly received the grant funds. On closer review in a compliance "spot check," however, the DCA questioned

Noe's eligibility with respect to the primary residency requirement, and undertook to rescind the grant. Noe contested that decision.

The contested matter was referred to the Office of Administrative Law ("OAL"). An administrative law judge ("ALJ") presided over a one-day hearing at which Noe, his significant other, and the owner of a neighboring house in Brick testified.

The ALJ issued a written decision on August 21, 2015, concluding that Noe had proven that the Brick property was his primary residence at the time of the storm. However, the DCA Commissioner rejected the ALJ's decision, concluding from the "objective evidence" that Noe's primary residence was in North Arlington, in Hudson County, not Brick.

Noe appealed to this court, and the matter was temporarily remanded to the DCA to allow it to amplify its decision. The DCA Commissioner issued a detailed amplification of reasons on November 17, 2017, reiterating his conclusion that Noe was ineligible for the grant.

The program rules specify the preferred method of establishing an applicant's primary residence of the damaged property is by providing a New Jersey driver's license identifying the address. N.J. Dep't of Cmty. Affairs, Resettlement Policies & Procedures 4.2 (2015) ("RSP Policies & Procedures").

If the proof on the driver's license is lacking, the applicant must present two of the following alternative documents: (1) a government-issued document sent to the damaged residence; (2) voter registration records; (3) insurance documentation listing the damaged address as the primary residence; or (4) other documentation on a case-by-case basis. RSP Policies & Procedures 4.3.

Noe testified at the OAL hearing he bought the house in Brick initially as a vacation home while he was living primarily at his mother's house in North Arlington. Noe worked for the Town of North Arlington in its maintenance department. In 2008, Noe's significant other was transferred to a full-time position in or near Ocean County and moved into the Brick residence. The North Arlington house is a two-family dwelling, where Noe's mother and son now live. His mother has a life estate in the home. According to Noe, he moved his primary residence to Brick in 2008, and commuted from there to his job in North Arlington. He stated he would often visit his mother in North Arlington for lunch during the week.

Much of the documentation in the record is inconsistent with Noe's claim of having his primary residence in Ocean County. He continued to use a North Arlington address on his driver's license, as well as on the registrations of his cars and boat. He continued to be registered to vote in North Arlington. In fact,

4

A-5173-15T1

Noe voted in North Arlington in November 2011 before the 2012 storm, and in March 2013 after the storm. Moreover, his federal and state income tax returns used the North Arlington address.

Noe provided his homeowners insurance policy listing the Brick property as his primary residence, which counts as one of the two necessary documents. Noe also provided his government-issued property tax bills for the Brick residence, which were mailed to the Brick address. The DCA points out, however, that a taxpayer can request tax bills be mailed for convenience to a different address other than that of the taxed property.

Noe provided his utility bills for the Brick property which showed a slight increase after he and his significant other contend he moved there. Noe also presented a resignation letter that he wrote to the Lyndhurst volunteer fire department, dated November 2008. In the letter he claims he is resigning because he moved to the shore.

Noe continued to hold himself out as a North Arlington resident when he applied for a promotion in the town. He explained that he did not change his address to the Brick residence with his employer, out of concern that doing so might have raised "red flags" and diminished his chances of obtaining the promotion.

A-5173-15T1

The DCA Commissioner's amplified decision concluded the ALJ "erred in valuing subjective testimony . . . over objective evidence," and "incorrectly accepted and considered documentation that is not acceptable proof of primary residence." The Commissioner determined that the ALJ's decision was "contradicted by sufficient, competent, and credible evidence in the record," and rejected it as "arbitrary, capricious and/or unreasonable and not supported by credible evidence." Accordingly, the Commissioner concluded that Noe was ineligible for an RSP grant, and the agency directed him to refund the grant monies he had improperly received.

On appeal, Noe argues the Commissioner's decision was unsupported by competent and credible evidence, and unfair. He seeks reversal and a restoration of his eligibility for the grant.

Our scope of review of this administrative agency's final decision is limited. In re Hermann, 192 N.J. 19, 27 (2007). The "final determination of an administrative agency . . . is entitled to substantial deference." In re Eastwick Coll. LPN–to RN Bridge Program, 225 N.J. 533, 541 (2016); see also In re Carroll, 339 N.J. Super 429, 437 (App. Div. 2001) (finding a "strong presumption of reasonableness attaches to the actions of administrative agencies") (citation omitted). To that end:

> The appellate court ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence.
>
> [In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008).]

When, as here, a contested case is submitted to the OAL for a hearing, the agency head must review the record submitted by the ALJ and give attentive consideration to the ALJ's initial decision. New Jersey Dep't of Pub. Advocate v. New Jersey Bd. of Pub. Utilities, 189 N.J. Super. 491, 500 (App. Div. 1983). The agency head remains the primary factfinder and maintains the ultimate authority to reject or modify findings of fact, conclusions of law, or interpretations of agency policy. Id. at 507; see also N.J.S.A. 52:14B-10(c); N.J.A.C. 1:1-18.6(c). Nonetheless, ALJs are not mere conduits for transmitting evidence to the agency head, and they should not be considered "second-tier players or hold an inferior status as factfinders." In Matter of Hendrickson, ___ N.J. ___, ___ (2018) (slip op. at 19).

Applying these standards of review here, we are satisfied the Commissioner's final agency decision finding Noe ineligible for the RSP grant is amply supported by substantial credible evidence in the record, and is neither

arbitrary nor capricious. In particular, we are persuaded the Commissioner had a sound basis in the record and in the governing law to reject the ALJ's finding that the Brick dwelling was Noe's "primary residence" at the time of Superstorm Sandy.

In his brief on appeal, Noe contends the Brick residence was his "domicile" as of October 2012, and thus should be treated for purposes of his RSP grant eligibility as his primary residence, regardless of the documentation listing North Arlington at that time as his address. Recently, we repudiated such reliance upon common-law domicile principles in New Jersey Dep't of Cmty. Affairs, Sandy Recovery Div. v. Maione, ___ N.J. Super. ___ (App. Div. Aug. 23, 2018) (slip op. at 14). As we explained in Maione, relying on the concept of domicile "would seriously compromise the essential purpose of these relief programs. It would require applicants to retain lawyers to research how the common law concept of 'domicile' can be applied in this context." Maione, ___ N.J. Super. ___ (slip op. at 10).

In Maione, the DCA Commissioner concluded that the applicant was not eligible under the RSP grant because he did not prove his shore property in Toms River was his primary residence. Maione, ___ N.J. Super. ___ (slip op. at 10). The applicant's driver's license listed a Hoboken address, his tax returns listed a

Hoboken address, and he was registered to vote in Hoboken. Maione, ___ N.J. Super. ___ (slip op. at 7). Additionally, although Maione had received a property tax rebate for the Toms River address in 2011 that rebate would not be considered "the type of documentation the DCA considers as proof of primary residence, especially in cases such as this, where there is strong countervailing evidence establishing otherwise." Ibid.

We upheld the agency's finding of Maione's ineligibility. As we stated:

> Appellant's argument attacking the approach employed by the ALJ and adopted by the Commissioner in determining what constitutes "primary residence" for determining who is eligible to receive a grant under RREM and RSP is not only without merit, it would lead to needless uncertainty and undermine the sound administration of these relief programs.
>
> The Sandy-related grants at issue here were created to assist a class of property owners whose "primary residence" was damaged or destroyed by this "[S]uperstorm." The grant applications contained a list of specific documents that the DCA uses to make these critical eligibility determinations. The public policy underpinning these relief programs is to provide financial assistance to a particular class of homeowners in a straightforward manner.
>
> [Maione, ___ N.J. Super. ___ (slip op. at 13-14) (emphasis added).]

Similar to the situation presented in Maione, Noe's license, tax returns, and voter registration records during the pertinent period contradicted his claim

that his primary residence was the Brick property. The Commissioner's final decision noted the alternative documentation presented by Noe – namely his 2008 resignation letter from the Lyndhurst volunteer fire department, his property tax bills, and his utility bills – were inadequate to substantiate that Brick was his primary residence.

Consistent with our analysis in <u>Maione</u>, the DCA Commissioner's final decision in this case appropriately required grant eligibility to be verified through objective documentary proof. The ALJ impermissibly relied on the subjective intent of Noe and inadequate documents. As the Commissioner accurately summarized the objective evidence:

> [T]he record reflects that there is substantial credible evidence, such as Noe's driver's license, voter registration, motor vehicle and boat registrations, and 2012 taxes, which show that the North Arlington property was Noe's primary residence at the time of Superstorm Sandy . . . . For all of these reasons, I reversed and rejected the ALJ's determination that the Brick property was Noe's primary residence . . . . All of the objectively verified documents presented reflect the North Arlington property as Noe's primary residence.

We endorse this sound conclusion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5173-15T1